UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:14-CR-00153 ERW |
| JAMES STALEY, | ) ) ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR A REDUCED SENTENCE**

The United States of America, through undersigned counsel, opposes Defendant's Motion for a Reduced Sentence, DCD 138, 140. Defendant has failed to identify any "extraordinary and compelling reasons" that qualify him for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A) pursuant to the First Step Act of 2018. Thus, Defendant's motion must be denied.

**BACKGROUND**

On March 11, 2015, the Grand Jury returned a four-count Second Superseding Indictment, charging Defendant with Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2. DCD 63. Defendant entered a guilty plea on April 30, 2015. DCD 80. Defendant's conviction was based on his scheme and artifice to obtain money from investors by knowingly making material false and fraudulent representations and promises to prospective investors to lure them into investing with his company. DCD 86. Many of the victims were elderly members of the Defendant's church or met the Defendant in a faith-based setting. Id. In total, 18 individuals and one trust fund invested over $3.3 million in investment products based on the Defendant's false and fraudulent representations and promises. Id. All of the investors lost their principal investments, which for many were their life savings, and never received the promised investment returns. Id.

1

On August 19, 2015, this Court sentenced Defendant to 84 months in custody. DCD 109. Defendant is presently serving his sentence at Sandstone FCI in Minnesota, with a projected release date of October 28, 2021. http:bop.gov/inmateloc (May 23, 2020).

On April 9, 2020, the Defendant filed a Motion for Relief under the First Step Act. DCD 138. On April 24, 2020, counsel for the Defendant filed supplemental material to Defendant's motion. DCD 140. This matter is now before the Court on Defendant's Motion for a Reduced Sentence, wherein Defendant argues: (1) the United States Sentencing Commission' Amendment 791 should apply retroactive relief; (2) the COVID-19 pandemic qualifies as an extraordinary and compelling reason for a reduction in sentence; and (3) the Defendant should be rewarded for his positive behavior while in custody.

## ARGUMENT

As this Court recently instructed in denying a request for early release based on COVID-19: "The law is clear: absent statutory authority, the Court cannot reduce a final sentence." *United States v. Adem*, No. 4:19-cr-00676-AGF, slip op. at 1 (Mar. 19, 2020) (ECF No. 242) (rejecting an unopposed request for early release of just six days in light of the coronavirus pandemic); *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 28 U.S.C. § 3582(b)). Here, Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act.

"In December 2018, as part of the First Step Act, Congress worked a change to the rule of long standing that a court could only modify a sentence upon motion from the Bureau of Prisons." *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (quotation and brackets omitted). To allow prisoners to petition courts directly for

compassionate release while still giving BOP the first opportunity to evaluate such requests, Congress amended section 3582(c) to include the following language:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the Defendant after the Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c) (emphasis added). Thus, a Defendant may now move the sentencing court for compassionate release but only "after (1) fully exhausting his administrative remedies, or (2) a lapse of 30 days from the warden's receipt of the Defendant's request." *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020).

While the First Step Act changed *who* could file a motion for compassionate release, it did not alter the requirements for granting relief. *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard."). Under the unmodified language in section 3582(c)(1)(A)(i), a sentencing court may reduce a term of imprisonment only for "extraordinary and compelling reasons." This phrase, in turn, is defined by the Sentence Commission's binding policy statement in section 1B1.13 of the Guidelines Manual. *See United States v. Korn*, No. 11-CR-384S, 2020 WL 1808213, at *3 (W.D.N.Y. Apr. 9, 2020) ("Congress delegated to the Sentencing Commission the task of [defining this phrase]."). Significantly, section 1B1.13 "limits the universe of extraordinary and compelling

3

reasons to five categories": (1) terminal illness, (2) debilitating medical conditions, (3) advanced age, (4) death or incapacitation of certain family members, and (5) other extraordinary and compelling reasons determined by BOP. *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019) (citing U.S.S.G. § 1B1.13 cmt. n.1). Additionally, before granting an early release, the court must verify that the "Defendant is not a danger to the safety of any other person or to the community" and consider whether a lesser sentence is appropriate under the section 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

Applying this framework to the present case, the Court must deny Defendant's request because he does not qualify for compassionate release under the criteria set out in the First Step Act and the Sentencing Guidelines.

## I. Defendant does not qualify for compassionate release under section 3582(c)(1).

Defendant has not met the high bar of showing that he is entitled to an early release under section 3582(c)(1)(A). *See White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019) ("It is the Petitioner's burden to prove a sentencing reduction is warranted [on a motion for compassionate release].") (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)).

First, although COVID-19 is a global pandemic and the sentencing guidelines changed subsequent to the Defendant's sentencing, those reasons do not qualify as an "extraordinary and compelling" reason "warrant[ing]" a reduction of Defendant's sentence. *See* U.S.S.G. § 1B1.13 cmt. n.1. Second, and equally problematic, Defendant has failed to demonstrate that he no longer poses a danger to the community and that the factors in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. As such, even if the Court finds that it has the authority to consider Defendant's motion, his request for compassionate release must be denied.

> ### a. *Defendant has not identified any "extraordinary and compelling reasons" that qualify under the Sentencing Commission's binding definition in section 1B1.13.*

4

First, Defendant fails to identify any circumstances that can justify release under section 3582(c)(1). To qualify for compassionate release, a Defendant must demonstrate that at least one of the "extraordinary and compelling reasons" identified in section 1B1.13 of the Sentencing Guidelines warrants a reduced sentence in his or her particular case. *See, e.g.*, *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3082202, at *1 (S.D. Ala. July 15, 2019) ("The Commission's policy statement thus establishes the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction."); *Brummett*, 2020 WL 1492763, at *3 ("[B]ecause [the Defendant's] grounds for relief do not accord with any of these categories, he cannot successfully obtain a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).").

Section 1B1.13 limits the universe of extraordinary and compelling reasons to:

(A) Medical Condition of the Defendant.—

    (i) The Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The Defendant is—

        i. suffering from a serious physical or medical condition,

        ii. suffering from a serious functional or cognitive impairment, or

        iii. experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of

5

        the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

  (C)    Family Circumstances. —

        (i) The death or incapacitation of the caregiver of the Defendant's minor child or minor children.

        (ii) The incapacitation of the Defendant's spouse or registered partner when the Defendant would be the only available caregiver for the spouse or the registered partner.

  (D)    Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.[1]

Here, Defendant claims that his life is in danger due to the COVID-19 pandemic. DCD 138, pg. 5. Thus, the only "extraordinary and compelling" category the motion even arguably implicates is the "Other Reasons" category. *See* U.S.S.G. § 1B1.13 cmt. n.1. However, U.S.S.G. § 1B1.13 (D), makes the "Other Reasons" category case specific as determined by the Director of the Bureau of Prisons and such a determination has not been made in this matter. Nor does Defendant show that he qualifies under and of the bases set out in BOP's Program Statement, which helps to define what circumstances qualify as "extraordinary and compelling" from BOP's perspective. Additionally, the Defendant has not alleged any specific illness or oddity associated with COVID-19. The Defendant is forty-five years old and does not allege that he is in poor health or more susceptible to infection.

---

[1] Shortly after the enactment of the First Step Act, BOP published a revised Program Statement 5050.50, which "provides guidance regarding subsection (D) and what qualifies as 'other reasons' that are 'extraordinary and compelling.'" *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019); *see also* FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Defendant does not assert that he is suffering from any medical condition, instead only advancing his anxiety about the spread of the coronavirus as a basis for release. At this point, the COVID-19 pandemic has impacted the lives of all Americans, and Defendant's concerns are understandable. But such generalized fear simply cannot justify early release under section 3582(C)(1). *See Eberhart*, 2020 WL 1450745, at *2 ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."); *see also Zywotko*, 2020 WL 1492900, at *2 (same). Because section 1B1.13 requires that a relevant medical condition must either be terminal or debilitating, Defendant cannot qualify for compassionate relief on this basis.

Facility-specific considerations do not factor into the "extraordinary and compelling" analysis under section 1B1.13, but even if they did, Defendant fails to show that his continued detention will expose him to significant health risks. In this regard, it is important to highlight the efforts that BOP has undertaken to mitigate coronavirus-related risks at its facilities. Effective March 13, BOP implemented Phase Two of its COVID-19 Action Plan, which required all facilities to "to mitigate the spread of the COVID-19" with proactive measures that included: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with allowances for medical treatment); (4) requiring staff health screening; (5) adopting a variety of coronavirus-specific protocols for inmates, such as screening new inmates and isolating and testing inmates with risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.* Since then, BOP has continued to refine its efforts with regular updates. *See* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five*, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (Mar.

31, 2020). For example, Phases Four through Six include new measures, like quarantining all incoming inmates for at least fourteen days and securing inmates in their quarters to decrease the potential for transmission. *Id.*; Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Six*, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (Apr. 14, 2020). As a result of these proactive steps, BOP has kept the majority of its facilities virus free and generally has limited transmission to a fraction of inmates where positive cases have occurred

By failing to even discuss the safeguards in place at Sandstone FCI (Defendant's BOP Facility), Defendant has "not shown that the [BOP] plan . . . is inadequate to manage the pandemic at Sandstone FCI, or that the facility is specifically unable to adequately treat him" *See Gileno*, 2020 WL 1307108, at *4. Not a single inmate has tested positive for COVID-19 at Sandstone FCI to date. *See* Fed. Bureau of Prisons, *Covid-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited May 26, 2020). Even if an outbreak were to occur at Sandstone FCI, which is increasingly less likely now that most states are past their "peaks," courts consistently have found that "[t]he mere presence of the virus . . . does not automatically translate to the release of [a Defendant]." *See United States v. Veras*, No. 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020) (collecting cases). For example, in denying a compassionate-release motion from an inmate at a facility with "40 positive cases," the *Korn* Court explained that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that [BOP] will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." 2020 WL 1808213, at *6; *see also Roberts*, 2020 WL 1700032, at *1 (denying compassionate release for HIV-positive inmate at a facility with several confirmed cases of COVID-19); *United States v. West*, No. CR ELH-19-0364, 2020 WL 1638840 (D. Md. Apr. 2, 2020) (denying request for temporary release

8

where the *pretrial detainee himself* had tested positive for COVID-19). Here, there is nothing to indicate that Sandstone FCI has been or will be unable to treat Defendant. Thus, Defendant has failed to meet his burden of showing that facility-specific considerations qualify as an "extraordinary or compelling reason" that would make release appropriate here. *See Gileno*, 2020 WL 1307108, at *4 (noting that, without particularized evidence of inadequate care, "the Court cannot assume that [BOP] will be unable to manage the outbreak or adequately treat [the Defendant]").

In sum, while Defendant's health concerns are understandable, they simply do not qualify him for compassionate release under section 3582(c)(1).

### b. *Defendant still poses a financial danger to the community, and the 3553(a) factors weigh strongly against release.*

Alternatively, the request for a sentence reduction should be denied because Defendant has failed to demonstrate that he no longer poses a danger to the community or that he otherwise merits release under the § 3553(a) factors. "In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *Gileno*, 2020 WL 1307108, at *1; *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). Additionally, "a reduction in sentence under [the First Step Act] requires a determination that '[t]he Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *Eberhart*, 2020 WL 1450745, at *2 (quoting U.S.S.G. § 1B1.13(2)). Because there is considerable overlap between each inquiry, they will be addressed together. *See id.* However, a Defendant's failure to show that *both* section 3142(g) *and* section 3553(a) favor a reduced sentence is fatal to such a request. *See United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *3–4 (E.D. Ky. Mar. 27, 2020) (concluding that the danger Defendant posed to the community and the section 3553(a) factors

9

each provided an independent basis for denying a request for compassionate release). Here, Defendant's motion suggests he no longer poses a danger to the community or that the factors in section 3553(a) favor a reduced sentence because he has enrolled in inmate programming and educational opportunities while incarcerated and does not have a criminal history of violence.

However, the Defendant has a history of serious fraud, which indicates he would pose a financial danger to the community if released early. *See United States v. Jinwright*, No. 3:09-CR-00067-W, 2010 WL 2926084 (W.D.N.C. July 23, 2010). On April 30, 2015 the Defendant pled guilty to four counts of Wire Fraud, in violation of 18 U.S.C. § 1343, in which the Defendant organized a scheme and artifice to obtain money from investors by knowingly making material false and fraudulent representations and promises to prospective investors to lure them into investing with his company. Many of the victims were elderly members of the Defendant's church or met the Defendant in a faith-based setting. In total, 18 individuals and one trust fund invested over $3.3 million in investment products based on the Defendant's false and fraudulent representations and promises. All of the investors lost their principal investments, which for many were their life savings, and never received the promised investment returns.

Nothing about the COVID-19 pandemic reduces Defendant's danger to others. In fact, the community itself, and specifically elderly individuals, are even more vulnerable to Defendant in light of the state of emergency. The confusion, distraction and vulnerability stemming from the COVID-19 outbreak provides opportunity to prey upon people more susceptible to fraud because there is heightened fear and uncertainty. Because first responders are focused on mitigating the effects of the COVID-19 outbreak, they are less equipped to prevent and respond to wrongdoing. Additionally, a number of courts have denied similar requests out of concern that releasing Defendants will increase COVID-19 risks for others because they are unlikely to follow shelter-

in-place orders and other guidance from state and local authorities. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020) (denying release, in part, because "supervising such a high-risk offender out in the community will place . . . officers at heightened risk of contracting the virus"). The same concerns apply equally to Defendant's request.

Defendant presents a danger to the community and should not be released. While it's commendable that the Defendant has sought treatment and enrolled in programming while incarcerated, Defendant's motion presents no new evidence that meaningfully shifts the balance of the 3142(g) or 3553(a) factors in Defendant's favor. *See Eberhart*, 2020 WL 1450745, at *2 (denying request for release because the "Defendant fail[ed] to demonstrate that the § 3142(g) factors considered at the time detention was ordered, or the § 3553(a) factors considered by the court at the time of sentencing . . . have materially changed"). Moreover, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 18 U.S.C. § 994(t). Accordingly, because Defendant has not met his burden of demonstrating that these considerations support release, his request for release must be denied on this basis.

**II.     United States Sentencing Commissions' Amendment 791 does not provide retroactive relief.**

The Defendant also seeks to reduce his sentence based on the United States Sentencing Commissions' Amendment 791 which became effective in November 2015. Defendant requests a reduction in his sentence because of a change in the sentencing guidelines which occurred after his sentencing. DCD 138, 140. Although the Defendant does not mention specific provision in the Sentencing Guidelines as a basis for his request, it appears he is requesting a reduction based upon Amendment 791. U.S.S.G. Manual app. C (2015).

On April 30, 2015, the Defendant pled guilty to four counts of a four-count Second Superseding Indictment. Counts one through four charged Wire Fraud, in violation of 18. U.S.C. § 1343. DCD 80. The parties agreed upon a total offense level of 28, with a criminal history category of I, the guideline imprisonment range was 78 months to 97 months. DCD 86, ¶81. Absent the plea agreement, a two-level enhancement pursuant to USSG §2B1.1(b)(9)(C) would have been applied because the offense involved a violation of a prior specific administrative order. DCD 86, ¶82. Resultantly, the total offense level would have been 30, with a guideline imprisonment range of 97 months to 121 months. Id. The Defendant was sentenced on August 19, 2015 to a term of 84 months on each counts, concurrently. DCD 109.

The applicable Sentencing Guidelines are the ones "in effect on the date the Defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). A federal court "may not modify a term of imprisonment once it has been imposed." *Dillon,* 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c) ). An exception is provided "in the case of a Defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* (quoting 18 U.S.C. § 3582(c)(2)). Under the U.S.S.G., Defendant's request for relief should be considered pursuant to U.S.S.G. § 1B1.10, which provides that a Defendant may seek a sentence reduction in limited circumstances. Importantly, Amendment 791 is not listed as one of the amendments intended to apply retroactively. *See United States v. Burkett*, No. 6:13-cr-60033, 2016 WL 5897782 (W.D. Ark. Aug. 16, 2016); *Morgan v. United States*, No. 16–0135–CV–W–DGK–P, 2016 WL 9046786 (W.D. Mo. May 2, 2016). Defendant has no basis for relief with this subsection of his Motion.

**III.    Court lacks jurisdiction to resentence the Defendant to home confinement, as BOP has "plenary control" over designation of inmates.**

Defendant also requests that the Court resentence him to home confinement as an alternative to his request for compassionate release. DCD 138, pg. 7. The Court must deny this request because it "has no authority to designate the place of confinement." *Eberhart*, 2020 WL 1450745, at *3. Instead, well-settled precedent recognizes that the BOP has complete authority to determine where an inmate is confined.

"While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citation omitted). Indeed, as the Supreme Court has made clear, "the BOP has *plenary control* . . . over 'the place of the prisoner's imprisonment.'" after the court imposes its sentence. *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621, 3624) (emphasis added). Furthermore, a number of courts have concluded that the COVID-19 pandemic does nothing to unsettle this long-standing rule. *See, e.g.*, *United States v. Oliver*, No. CR JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020) ("[I]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement pursuant to 18 U.S.C. § 3624(c)."); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (same); *Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) ("[T]he Court lacks authority to designate home confinement."). Thus, regardless of the Court's determination on compassionate release, the authority to determine Defendant's placement for the remainder of his sentence rests solely with the BOP. Any suggestion to the contrary must be rejected out of hand.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's motion as United States Sentencing Commissions' Amendment 791 does not provide

retroactive relief and the overwhelming majority of courts that have denied requests for compassionate release in light of COVID-19 pandemic.[2] *See Adem*, slip op. at 1; *Albertson*, 2020 WL 1815853, at *1-2; *Brown*, 2020 WL 1479129, at *1; *Clark*, 2020 WL 1557397, *1, 3; *Eberhart*, 2020 WL 1450745, at *2; *Garza*, 2020 WL 1485782, at *1–2; *Gileno*, 2020 WL 1307108, at *4; *Hernandez*, 2020 WL 1445851, at *1; *Johnson*, 2020 WL 1663360, at *2–6; *Korn*, 2020 WL 1808213, at *8; *Raia*, 954 F.3d at 597; *Reeves*, 2020 WL 1816496, at *1; *Roberts*, 2020 WL 1700032, at *2; *Zywotko*, 2020 WL 1492900, at *1.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Dianna R. Collins*
Dianna R. Collins, #59641MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

---

[2] The Court should not grant a sentence modification absent a release plan that includes specific conditions for avoiding COVID-19. Additionally, the Government requests that any order granting release accommodate the need to quarantine a Defendant for a period of at least fourteen days to protect public health. Specifically, the Court should retain jurisdiction over the motion for fourteen days if it makes a determination to grant release, while advising the parties of that decision. BOP will then place the inmate in quarantine. If the Defendant has not displayed symptoms or tested positive for COVID-19 during that period, the Court may then order release. If the Defendant does tests positive during the initial fourteen-day period, the Government will notify the Court and seek an extension of the release date until the Defendant has tested negative.

   I hereby certify that on May 26, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record and sent via United States Mail to:

JAMES STALEY, III
Petitioner pro se,
FCI Sandstone 41812-044
PO BOX 1000, Unit K-1
Sandstone, MN 55072

             _/s/Dianna R. Collins_
             Dianna R. Collins, #59641MO
             Assistant United States Attorney